IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
STATE OF MISSOURI

| | |
|---|---|
| **BRANDI GOULART,** *individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>**WALGREEN CO.,** *and* **DOES 1 through 10,**<br><br>Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION PETITION**

Plaintiff Brandi Goulart, individually and on behalf of all others similarly situated, hereby files this, her First Amended Class Action Petition, against Defendant Walgreen Co., and DOES 1 through 10 (collectively "Defendants") for their gender-discriminatory pricing scheme which constitutes an illegal, "unfair practice" in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

## I. INTRODUCTION

1. This lawsuit addresses a particularly pernicious example of the so-called "Pink Tax," the price difference for female-specific products or services compared with those offered to men. Study after study has found that, women, on a systematic and wide-spread basis, are charged more than men for what are essentially the exact same products or services.[1] This gender-based price discrimination is indisputably harmful to women, adding another layer to the wage inequality that women face, ultimately making it harder for women to make ends meet.[2] In fact, over twenty years ago, in 1994, the State of

---

[1] *See, e.g.,* "From Cradle to Cane: The Cost of Being a Female Consumer, A Study of Gender Pricing in New York City," New York City Department of Consumer Affairs, 2015.
[2] As just one of multiple examples, the United States Bureau of Labor Statistics recently reported that

1

California estimated that the average woman is charged an extra $1,351.00 per year, simply for being a woman; those numbers have only increased over the last two decades.

2. Gender discrimination in pricing has become such a scourge affecting female consumers that governments in multiple areas of the country have specifically outlawed the practice, including those in New York, Miami-Dade County, Florida, and California. In addition, in April of 2019, two members of the United States Congress introduced H.R. 2048, the *Pink Tax Repeal Act,* a bipartisan bill aimed at eliminating gender-based discrimination in pricing. The bill's sponsor pointed out that "[t]he pink tax is not a one-time injustice. It's an insidious form of institutionalized discrimination that affects women across the country from the cradle to the grave."[3]

3. To be sure, not every instance of gender discrimination in pricing is unjustified; in certain circumstances, there may exist very real, material differences in products or services that legitimately account for such pricing variances. However, for every "justified" instance of gender-discrimination in pricing, there are scores more instances where the practice is unjustified and completely unfair. This lawsuit concerns a particularly pernicious and predatory example of unfair gender discrimination in pricing: the pricing of a *nearly identical* female-marketed product at a substantially higher price than its male-marketed counterpart. This practice is unjustified and, by all measures, unfair.

4. In many cases, including in this one, gender-discriminatory pricing is not only unfair, but it also is deceptive, and the deceptive nature of the practice compounds and increases its unfairness. The average consumer, for instance, is largely unaware that nearly-identical products marketed to the opposite sex are substantially cheaper, especially when products are differentiated in size and packaging style and often located in different parts of a store. Despite the fact that, technically, men and women

---

women's median earnings were 83 percent of those of male full-time wage and salary workers. *See* "Highlights of women's earnings in 2014." BLS Reports, Report #1058, November 2015.

[3] *See* "Reps Speier & Reed Reintroduce Pink Tax Repeal Act to End Gender-Based Pricing Discrimination," April 3, 2019 Press Release, available at: https://speier.house.gov/media-center/press-releases/reps-speier-reed-reintroduce-pink-tax-repeal-act-end-gender-based.

Electronically Filed - St Charles Circuit Div - July 16, 2019 - 11:37 AM

are able to purchase a product marketed to the opposite sex, that alternative is even more unfair due to social conditioning and societal expectations regarding what is "feminine" versus "masculine." Just as it would be unfair for men to have to purchase and use pink-colored razors to get a better price, it is unfair for women to have to, for instance, "smell like a man" to get a better price on their deodorant or aftershave. In short, grossly overcharging women for nearly-identical products is an unavoidably unfair practice.

5.  Fortunately for women living in Missouri, they are protected by the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), which specifically outlaws such "unfair practices." By bringing this lawsuit, Plaintiff aims not only to protect and to compensate all Missouri women victimized by Defendants in this manner, but also to punish and make an example of Defendants for their long-standing, insidious and predatory gender discrimination through the institution of punitive damages.

## II.     PARTIES, JURISDICTION, AND VENUE

6.  Plaintiff Brandi Goulart is a citizen and resident of St. Charles County, Missouri.

7.  Plaintiff brings this First Amended Class Action Petition individually and on behalf of a putative class of all Missouri residents.

8.  Defendant Walgreen Co. (hereinafter "Walgreens") is an Illinois corporation having its principal place of business at 300 Wilmot Rd., Deerfield, IL 60015. Walgreens may be served at: The Prentice-Hall Corporation System, Inc., 221 Bolivar Street, Jefferson City, MO 65101.

9.  Defendant Walgreens is the manufacturer and distributor of the product at issue, and therefore controls pricing of the product and is thus responsible for the conduct complained herein, upon information and belief. Walgreens also, as set forth herein, sold the Product (as hereinafter defined) to Plaintiff and to the purported class both through their Missouri-based retail locations as well as online, via Walgreens' consumer website, www.walgreens.com.

10.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

11.     Venue is proper in the Circuit Court of St. Louis County, Missouri, because the Plaintiff resides here, and a substantial part of the events or omissions giving rise to the claims in this action occurred in this venue.

12.     This forum also is superior in convenience to any other, as all of the Plaintiffs are or were Missouri citizens and are located in Missouri, and the acts complained of violated Missouri law.

13.     This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA. Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable. This action raises questions of law and fact common among Plaintiffs. The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

14.     <u>Class definition</u>: Plaintiff Brandi Goulart brings this action on behalf of herself and a class of similarly-situated persons preliminarily-[4] defined as follows: All persons, who, within the Class Period, purchased "Walgreens"-brand "Women's Earplugs" (the "Product")[5] in Missouri. The Class Period begins five years prior to the date of the filing of this First Amended Petition, and ceases upon the date of the filing of this First Amended Petition. Excluded from the Class are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their

---

[4] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.
[5] As that term and label is defined in greater detail *infra*.

4

subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

15. <u>Numerosity</u>:  Upon information and belief, the Class includes tens of thousands, if not hundreds of thousands, of individuals on a statewide basis, making their individual joinder impracticable.  Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are readily ascertainable from Defendants' records.

16. <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, employing an "unfair practice" under the MMPA, using gender-discriminatory pricing in offering and selling the Product to Plaintiffs.

17. <u>Adequacy</u>:  Plaintiff Brandi Goulart is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent and experienced counsel, and she intends to prosecute this action vigorously.  The interests of the Class will be protected fairly and adequately by Plaintiff and her counsel.

18. <u>Commonality</u>:  Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendants' gender discriminatory pricing is an "unfair practice" pursuant to the MMPA; (b) whether and to what extent the Class members were injured by Defendants' illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to punitive damages;

(e) whether the Class members are entitled to declaratory relief; and (f) whether the Class members are entitled to injunctive relief.

19.   <u>Superiority</u>:  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct.  Thus, it would be extremely difficult for the individual Class members to obtain effective relief.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

### III.   BACKGROUND

20.   Defendants manufacture, distribute, and sell the product at issue herein, "Walgreens"-brand "Women's Earplugs" (the "Product").

21.   Defendants offer the Product for sale via their Missouri-based retail locations and via their online website, www.walgreens.com

22.   The Product is packaged in two different manners, as depicted below:

 

a.

23. Regardless of how the Product is packaged, the contents and Product are the same: "ultra soft," pink- or purple-colored earplugs with a "32db" "Noise Reduction Rating."

24. The Product is clearly marketed towards women, appearing in more "feminine" colors and clearly stating on the packaging that the earplugs are "Women's Earplugs."

25. Defendants also offer for sale, in their Missouri-based retail locations and via their online website, www.walgreens.com, earplugs marketed towards men.

26. The "Men's" earplugs are packaged as depicted below:



a.

27. The "Men's" earplugs are also "super soft," and have a "32db" "Noise Reduction Rating."

28. Upon closer inspection and analysis, and upon information and belief, other than color, the earplugs contained in the male-marketed packaging are identical in every material respect to those contained in the Products packaging.

29. In other words, the "female"-marketed version of the earplugs are, other than color, identical to the "male"-marketed version of the earplugs.

Electronically Filed - St Charles Circuit Div - July 16, 2019 - 11:37 AM

30.     However, because the "Women's Earplugs" are different in color and specifically marketed towards women, upon information and belief, they convince a reasonable woman that they are, in some manner, more-appropriate for women than the male-marketed version.

31.     Indeed, the entire point of the change in packaging and change in labels in to convince women to buy the "Women's Earplugs" over the "Men's" earplugs.

32.     Because the earplugs in either version are materially identical, a reasonable consumer would assume that they would be priced the same.

33.     However, despite the fact that the Product only contains 12 sets of earplugs and the "Men's" Earplugs contain 14 sets of earplugs, both online and in every retail location in Missouri, Defendants charge its customers significantly more for the Product.

34.     Both online and in Defendants' Missouri-based retail locations, the "Men's" Earplugs cost significantly less than the Product.

35.     In other words, Defendants herein charge their customers substantially more for the "women's version" of essentially the exact same product.

36.     There are few better examples of the gender discriminatory and *unfair* "Pink Tax" than in Defendants' sale of the Product to Missouri consumers.

37.     Online, on www.walgreens.com, the "Men's" earplugs cost $4.59, whereas the Product costs $5.49.  Based on sets of earplugs provided, the "Women's Earplugs" cost $.46 per set, whereas the "Men's" earplugs costs only $.33 per set.  Stated otherwise, Defendants charge approximately 45% more for the female-marketed product than they do for the materially identical male-marketed product.

38.     In Missouri retail locations, the "Men's" earplugs cost $5.29, whereas the Product costs $5.79.  Based on sets of earplugs provided, the "Women's Earplugs" cost $.48 per set, whereas the "Men's" earplugs costs only $.37 per set.  Stated otherwise, Defendants charge approximately 30% more for the female-marketed product than they do for the materially identical male-marketed product.

39. Thus, due to Defendants' unfair practice, women consumers are being charged significantly more than men for essentially the exact same product.

40. For the multiple reasons set forth above and below, Defendants' pricing and selling of the Product constitutes an "unfair practice" that is illegal and prohibited under the MMPA.

*Facts Particular to Brandi Goulart and Representative of the Proposed Class*

41. In or around July of 2019, Plaintiff visited a retail outlet for Defendant Walgreens.

42. While there, Plaintiff purchased the Product for $5.49.

43. On the previous day, Plaintiff purchased the Product from Defendants' online website, paying $5.49 (plus shipping).

44. When Plaintiff purchased the Product from Defendants' retail location and from Defendants' online website, as set forth above, she was injured by Defendants' unfair practice of employing a gender-discriminatory pricing scheme.

45. There is no legitimate or material difference in the labor, ingredients and/or related costs of production underlying Defendants' gender-discriminatory pricing schemes to justify the significant price disparity between the Product and male-marketed, materially identical, "Men's" earplugs.

46. The terms of the MMPA, particularly the term "unfair practice," must be liberally construed to protect consumers.[6]

47. The 2019 version of the Merriam-Webster dictionary provides, as one definition of "unfair," something that is "not equitable in business dealings." "Equitable" is defined as "dealing fairly and equally with all concerned." Obviously, Defendants' gender-discriminatory pricing schemes do not deal "equally" with purchasers of female-oriented products who are required to pay substantially more than purchasers of the male-oriented version of essentially the exact same product.

---

[6] According to the Supreme Court of Missouri, "[t]he literal words [of the MMPA] cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co. Inc. of Ohio v. Nixon,* 37 S.W.3d 237, 240 (Mo. 2001).

9

48. Moreover, a Missouri regulation, 15 Mo. C.S.R. § 60–8.020, draws its authority from, and was promulgated to enforce, the MMPA; Section 60-8.020 provides that an "unfair practice" is any practice which, *inter alia,* "[o]ffends any public policy as it has been established by the Constitution, statutes or common law of [Missouri] … or … is unethical, oppressive or unscrupulous."

49. Defendants' arbitrary and discriminatory pricing scheme is both "unethical" and "unscrupulous," and is "oppressive" to women; indeed, it is almost *universally* accepted that practices such as Defendants' are "unfair."[7]

50. In addition, Defendants' gender-discriminatory pricing schemes offend the same Missouri public policies underlying Missouri's express prohibitions against gender discrimination in multiple other areas, policies protecting the fact that all Missouri citizens are entitled to full and equal accommodations, advantages, facilities, privileges, and/or services regardless of factors like sex and/or race.

51. For example, the Missouri Human Rights Act ("MHRA"), R.S. Mo. § 213.065(1) provides, generally, that "all persons within the jurisdiction of the state of Missouri are free and equal and shall be entitled to the full and equal use and enjoyment of any place of public accommodation [which includes retail stores] … without discrimination … on the grounds of, [*inter alia*] … sex."

52. The MHRA further provides that "[i]t is an unlawful discriminatory practice for any person, directly or *indirectly,* to … withhold from or deny any other person … *any* of the … advantages

---

[7] As just a few examples of the overwhelming consensus that such practices are unfair, supporters of the federal *Pink Tax Repeal Act* stated, *inter alia,* as follows: "It's time for these unfair practices to end." – Emily Martin, Vice President for Education & Workplace Justice at the National Women's Law Center; "There is no reason why men and women should pay different prices for essentially the same products or services; [t]his unfair practice should be stopped. The *Pink Tax Repeal Act* is a critical step in thwarting this unfair practice." – Susan Grant, Director of Consumer Protection and Privacy at Consumer Federation of America; "For products and services that do not differ in the labor, materials and related costs of production, it is unfair to charge more based on the gender of the consumer to whom it is marketed." – Richard Holober, Executive Director of the Consumer Federation of California. *Available at*: https://speier.house.gov/media-center/press-releases/reps-speier-reed-reintroduce-pink-tax-repeal-act-end-gender-based.

… services … or privileges made available in any place of public accommodation … on the grounds of, [*inter alia*] … sex." R.S. Mo. § 213.065(1)(emphasis added).

53. Accordingly, regardless of whether Defendants' gender-discriminatory pricing schemes violate the exact "letter" of the MHRA, the pricing schemes clearly offend some of the same public policies underlying the MHRA – particularly that consumers should be free from discrimination based on factors such as race and gender.

54. In addition, 15 C.S.R. § 60–8.020 further provides that an "unfair practice" under the MMPA is any practice which, *inter alia,* "[o]ffends any public policy as it has been established by … the Federal Trade Commission, or its interpretive decisions…"

55. The Federal Trade Commission ("FTC") has enforcement or administrative responsibilities under multiple laws, including the Federal Trade Commission Act and the Clayton Act.

56. The Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13, provides, *inter alia,* that it "shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality …"

57. Accordingly, regardless of whether Defendants' gender-discriminatory pricing schemes violate the exact "letter" of the Robinson-Patman Act, the pricing schemes clearly offend some of the same public policies underlying that Act – particularly that consumers should be free from pricing discrimination based on factors such as race and gender.

58. Likewise, the Federal Trade Commission enforces the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* (the "ECOA").

59. The ECOA, *inter alia,* makes it unlawful for a creditor to discriminate against any individual on the basis of age, race, color, religion, sex or marital status.

60. Accordingly, regardless of whether Defendants' gender-discriminatory pricing schemes

Electronically Filed - St Charles Circuit Div - July 16, 2019 - 11:37 AM

violate the exact "letter" of the ECOA, the pricing schemes clearly offend some of the same public policies underlying the ECOA – particularly that individuals should be free from discrimination based on factors such as race and gender.

61. Thus, for several reasons, it is clear that Defendants' gender-discriminatory pricing schemes also "offend[] any public policy as it has been established … by the [FTC]." *See* 15 C.S.R. § 60–8.020.

62. As such, for at least the multiple, independent reasons set forth *supra*, Defendants' gender-discriminatory pricing schemes constitute "unfair practice(s)" prohibited by the MMPA.

63. In short, under Missouri law, Defendants' gender-discriminatory pricing is illegal.

IV.     **CAUSES OF ACTION AGAINST DEFENDANT(S)**

**COUNT ONE: VIOLATION OF THE MMPA – "Unfair Practice" -- Discriminatory Pricing**

64. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this First Amended Petition, as though fully set forth herein.

65. The Defendants violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), by employing gender-discriminatory pricing schemes in charging substantially more for a female-marketed version of a materially-identical product than Defendants charge for the corresponding male-marketed version.

66. For at least the multiple, independent reasons set forth *supra*, Defendants' gender-discriminatory pricing schemes constitute "unfair practice(s)" pursuant to the MMPA, and thus are illegal under Missouri law.

67. As set forth above, Defendants engaged in such "unfair practices" in transactions with Plaintiff and the Class in Missouri which were intended to result in, and did result in, the sale of the Product, "merchandise" under the MMPA.

68. Pursuant to Defendants' numerous violations of the MMPA, Plaintiffs were damaged,

suffering ascertainable losses in the full amount of the Product Plaintiffs paid to each Defendant.

69. Due to Defendants' illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

70. In addition, Defendants' conduct as aforesaid was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and others similarly situated and, therefore, warrants the imposition of punitive damages.

71. Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

**COUNT TWO: INJUNCTIVE RELIEF**

72. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth above.

73. Defendants continue to retain payment made by Plaintiffs and other members of the Class for the Product that is the result of Defendants' unfair practices in violation of the MMPA.

74. Applicable law, including R.S. Mo. § 407.025, permits the Court to enter injunctive relief to prevent Defendants' continued violation of the law by continuing to charge substantially more for a female-marketed version of a materially-identical product than Defendants charge for the corresponding male-marketed version.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order certifying this action as a class action and appointing Plaintiff Brandi Goulart as class representative and her counsel as class counsel.  Plaintiff requests that this court find that the Defendants violated the MMPA, and award Plaintiffs compensatory damages, restitution, attorneys' fees, punitive damages, costs, and such further relief as the Court deems just.

Electronically Filed - St Charles Circuit Div - July 16, 2019 - 11:37 AM

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*

Electronically Filed - St Charles Circuit Div - July 16, 2019 - 11:37 AM